EMMA HOSKOVEC, APPELLEE, V. OMAHA STREET RAILWAY
COMPANY, APPELLANT.

FILED NOVEMBER 9, 1909.  No. 16,177.

1. **Questions** of fact on conflicting evidence are for the determination
of the jury.

2. **Evidence:** PROVINCE OF JURY.  Where the evidence is conflicting, it
is within the province of the jury sitting at the trial to consider
all proved physical facts and conditions attending the main fact
for the purpose of arriving at the true solution of the question
presented.  They are not bound by the number of witnesses testi-
fying, if in the exercise of reasonable judgment they are con-
vinced that the truth is shown by the side producing the smaller
number of witnesses.

3. **Appeal:** EVIDENCE: HARMLESS ERROR.  A witness was called by
plaintiff whose testimony suported the theory of plaintiff.  On a
subsequent trial her testimony was directly opposite that pre-
viously given by her, and sustained the theory of the defense.  At
the time of the trial from which this appeal is taken she was not
within the jurisdiction of the court, and plaintiff read her testi-
mony given in the first instance, including her cross-examination
by defendant.  The cross-examination and reexamination took a
wide range, including statements the witness was claimed to have
made to an agent of defendant, and tended to show that by
improper solicitation the agent had sought to persuade her to
change her version of the transaction constituting plaintiff's
cause of action.  The reading of a part of the cross-examination
and all of the reexamination was objected to and the objection
overruled.  During the presentation of defendant's evidence it
introduced and read the contradicting testimony of the witness
given upon the later trial.  *Held,* First, that the ruling of the
court permitting the cross-examination to be read was not such
error as would call for the reversal of the judgment; and, second,
that the introduction of the testimony given during the later
trial rendered the reading of the cross-examination and reex-
amination admissible, and that, having been introduced out of
its proper order, although irregular, was not reversible error.

4. ———: ———: ———.  The admission of irrelevant evidence
which could have no bearing or effect upon the issues in the case,
while erroneous, but without benefit to either party, will not
require the reversal of a judgment.

5. **Instructions** given and refused, set out in the opinion, *held* not to be erroneous.

6. **Trial: Instructions: Discretion of Court.** The giving or refusing to give cautionary instructions, such as that the jury are not to allow their sympathy for either party to control or affect their finding, to some extent is within the discretion of the presiding judge, depending upon the exigencies of each particular case. The refusal to give such an instruction will not, usually, require reversal of a judgment, there being no question of law presented thereby.

7. **Damages.** Plaintiff received the personal injury complained of in the suit when she was 22 years of age. From that time until the trial of the cause, six years thereafter, she suffered continually from the effects of the injury. Her mental and physical faculties were impaired. She had at no time been able to engage in her usual avocations, and during portions of the time she was unable to care for herself. The undisputed and convincing evidence was that no recovery could follow, but that she was thus injured for life. *Held,* That the sum of $12,750, which included medical attendance, was no more then compensatory.

APPEAL from the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. *Affirmed.*

*John L. Webster* and *W. J. Connell,* for appellant.

*Weaver & Giller* and *Frank T. Ransom, contra.*

REESE, C. J.

This is the second appeal in this case. The opinion on the former hearing is reported in 80 Neb. 784. The judgment of the district court upon that trial was in favor of defendant. The cause was remanded to the trial court, and, upon the last trial being had, the verdict of the jury was in favor of plaintiff, upon which a judgment was rendered, and the cause is appealed by defendant.

The case is elaborately briefed and has been ably argued at the bar of the court, the discussion covering a wide range of alleged errors, but it is thought the questions presented may be properly decided without an extended discussion of the propositions separately. As shown by

the recitals contained in the former opinion, as well as by the record now before us, plaintiff was a passenger on one of defendant's street cars on the evening of September 22, 1902, and that, in alighting from the car at the intersection of Thirteenth and Dodge streets in the city of Omaha, she was thrown or fell upon the pavement and received serious and permanent injuries. There is little, if any, dispute as to the character or permanency of the results of the accident, but the main contention upon the trial was as to the manner in which the injuries were inflicted or received. It is alleged by plaintiff that, as the car upon which she was a passenger was approaching Dodge street on Thirteenth, she informed the conductor that she desired to alight at Dodge street; that the car was stopped at the proper place for that purpose; that she stepped upon the running-board at the side of the car, the car being an open one, and when the car stopped she caught hold of the stanchion, or appliance prepared for the purpose, with her left hand, with her face toward the front, and as she was in the act of stepping upon the pavement the car was given a sudden jerk forward in the act of being started, and she was thereby thrown upon the pavement and received the injury complained of; that the unexpected and negligent starting of the car by the employees of defendant was the cause of the accident. Plaintiff's testimony supported these allegations. She fell upon her face, striking her chin, the most serious injury being the dislocation of her under jaw upon the right side. Her chin showed the force of her fall, as there was a bruise and abrasion thereon. There were other minor injuries inflicted upon other portions of her body.

The defendant insists that, upon arising to step off the car, she, without waiting for the car to stop, took hold of the support with her right hand, and with her face to the rear stepped off, and that her fall was the result of her own negligence in so alighting before the car was brought to a stop and by stepping off with her face to the rear, instead of the front, as she should have done. This con-

tention of defendant was supported by the conductor of the car and three passengers. It will be seen that there was a sharp conflict in the evidence.

Another witness, a negro woman by the name of Busch, who was upon the car at the time of the accident, was called by plaintiff on two of the former trials. Upon the first her testimony supported that of plaintiff, and upon the second that of defendant. She was not called as a witness upon the trial from which this appeal is taken, but, being out of the jurisdiction of the court at that time, her former testimony was read to the jury, that given the first time by plaintiff, and that given on a later trial by defendant. Under these circumstances one may assume that the jury ignored all she had said, and properly treated her as wholly unreliable and untruthful.

The contention of both parties was supported to some extent by physical conditions or other witnesses. It was and is insisted that, as all the injuries received by plaintiff were on the front part of her body, the inference was necessarily and properly drawn by the jury that she must have been standing on the running-board with her face to the front, or, if otherwise, as claimed by defendant, she would have fallen backward, instead of upon her face. Practically the same conflict existed as to the time when plaintiff stepped off the car. She testified that the car had stopped. The four witnesses referred to maintained with equal positiveness that the car had not stopped, but was still in motion at that time, and the stop was made soon after plaintiff fell. Either by inferences which might be drawn from the facts proved, or by the testimony of the witnesses, each side might be said to have received some support. The whole of the evidence has been read with care, and, while it might be that we would have come to a conclusion different from that arrived at by the jury upon this part of the case, yet, the jury being the sole judges of the weight of the evidence and of the credibility of the witnesses, we cannot interfere with their decision.

Referring again to the witness Mrs. Busch, it appears that upon being called as a witness the first time her testimony was all unequivocally in favor of plaintiff as to the manner in which the injury occurred. Upon her cross-examination she was interrogated as to a statement she had made to a claim agent of defendant who had interviewed her soon after the accident. As shown by this cross-examination, her statement, or what purported to be such, was written down by the claim agent, but not signed by her. She made many statements as to what had occurred at that interview which reflected upon the claim agent. The cross-examination took rather a wide range and became something of a contest between the attorney and the witness, the attorney being apparently willing that she should exhibit her partisanship to the fullest extent, and in this he was, to some degree at least, successful. This occurred in one of the early trials, probably the first. The inference drawn by plaintiff was that at that interview defendant's agent sought by improper solicitations to influence the witness to abandon or change her statement as to what occurred at the time of the accident. She was called as a witness for plaintiff during subsequent trials of the case, probably the second, third, fourth, fifth and sixth. On one occasion she remained in the courtroom until near when the time her testimony was needed, when she disappeared, and was brought in by attachment. When placed upon the stand the last time she was personally examined in the presence of the trial jury, and her testimony was to a great extent squarely contradictory of that to which she formerly testified. Upon the last trial she was without the jurisdiction of the court, and plaintiff offered her testimony formerly given, including the whole both in chief and on cross-examination, in evidence, and the defendant offered her testimony given at the subsequent trial. Both were received and read to the jury.

The principal contention on the part of defendant here is that the district court erred in allowing plaintiff to

read all the cross-examination of the witness by defendant upon her former cross-examination. It is claimed that defendant had the right to pursue the course taken in the cross-examination, and would in no sense be bound by the remarks and reflections of the witness. This is in a sense true. It might be, however, competent to show that an improper effort had been made in the first instance to tamper with the witness, and that the proof of the fact was brought out on that cross-examination. In that event the evidence might be admissible. After plaintiff had closed her case, the defendant, as we have seen, offered the later testimony of the same witness taken upon one of the later trials. The witness was examined and her testimony originally taken by plaintiff. There was no cross-examination by defendant, the evidence being all in its favor and no cross-examination necessary. We think that, had plaintiff not introduced in chief the cross-examination by defendant and reexamination in the first trial, it would have been competent to read it in rebuttal. If so, the question arises: Does the fact that it was introduced out of its proper order, if such were the case, require the reversal of the judgment? We are inclined to think not. It cannot be necessary for us to inquire as to which of the stories told by the witness was true and which false. They could not have both been true. That the witness at some time committed perjury must be apparent. That she was not entitled to any credit must, we think, be conceded. Her conflicting stories having been submitted to the jury, an explanation would naturally be sought by counsel, the court and the jury. While the explanation was not shown to the satisfaction of any perhaps, yet that cross-examination might shed some light upon the question and be left to the jury for its consideration. There was nothing reflecting upon the action of any of the attorneys appearing in the case. Counsel for defendant have presented a separate brief upon the law as believed to have a bearing upon the question, but we find no case which antagonizes the view here expressed. We are led

to the opinion that there was no such prejudicial error in the rulings of the trial court upon this subject as would, of itself, call for a reversal of its judgment.

A somewhat similar question is presented concerning the ruling of the court in overruling objections made to the testimony of one of plaintiff's attorneys which detailed the oral proceedings in the trial court on the former trial in procuring the attachment for the witness referred to. According to plaintiff's theory of the case, it might have been entirely proper to show that in the later trial it was necessary to procure the compulsory process of the court to secure the attendance of the witness, but we are unable to see how this detailed inquiry could possibly be material, nor how it could have had any bearing upon the case. True, it might be proper to show that it was necessary to make use of the compulsory process to bring in the witness, but what the judge, sitting as the court, may have said, or the fact that he indorsed the allowance of the issuance of the writ upon any of the files of the case, there being nothing said or done having any bearing upon the issues involved, was of no consequence whatever, nor could it work any prejudice to defendant. The proof of the facts as detailed was simply time and energy wasted.

Objection is made to the ruling of the court upon objections to a part of the testimony of plaintiff. The whole case, in so far as it shows the effect of the injury upon the after life of plaintiff, is quite convincing that she suffered a permanent injury, one from which she could never recover. The injury was received about the 22d day of September, 1902. The trial was entered upon on the 19th day of October, 1908. The lapse of time was quite sufficient to give a correct idea of the probabilities as to recovery, to say nothing of the opinions of the physicians who had treated her and had examined her at various times. She was asked what she had done since the accident, and, upon her statement that she had done nothing, she was asked *why* she had done nothing. Objection to this was overruled, and she answered that it was

on account of her inability to labor. Objection was then made to the answer as the conclusion of the witness. This objection is urged here. We can see no merit in this and other objections of a similar kind. It was certainly competent for her to testify as to her health and inability to labor as resulting from the injury. That the method of calling for the fact might have been improved upon is probably true, but the evidence was competent and did not call "for the conclusion of the witness."

The contention, strongly made and urged, that the verdict is not sustained by the evidence has probably been sufficiently noticed above. Under the evidence and circumstances as shown, both as to the act of plaintiff and the nature and location of the injuries, we cannot say that the verdict was wrong.

No complaint is made of any instructions given the jury by the trial court, but it is insisted that the court erred in refusing to give the ninth and eleventh instructions asked by the defendant. The ninth is as follows: "You have no right, gentlemen of the jury, to throw out or disregard the testimony of any witness who appears to be fair and honest, and who is in a position to know the facts about which he or she testified, and whose statements are consistent with the truth, and who is corroborated by other reputable witnesses." It may well be doubted if this instruction should be given in any case where the evidence is conflicting. It often occurs in human experience and observation that persons of known truth and probity may receive different impressions as to facts and transactions occurring in their presence. A, a truthful and honest witness, testifies to the transaction according to the impressions made upon his mind, or as his memory retains it; B, just as truthful and just as honest, testifies to it as he saw and remembers, and yet their testimony differs widely. There may be, and often is, a direct conflict. It devolves then upon the trier of fact, in the consideration of both stories, to seek the truth by weighing all the probabilities of the case to be drawn

from the proved and known conditions surrounding the event or transaction. If the conclusion is that one is mistaken, however honestly, his testimony must be disregarded, no matter how "fair and honest" he may appear, or what his "position to know the facts" may have been, or how much he may be "corroborated by other reputable witnesses." It is believed that instruction numbered 9, given by the court upon its own motion, was sufficient upon this point. It is as follows: "(9) You are instructed that the preponderance of evidence in a case is not alone determined by the number of witnesses testifying to a particular fact or state of facts. In determining upon which side the preponderance is, you should take into consideration the opportunity of the witnesses for seeing or knowing the things about which they testify, their conduct and demeanor while testifying, their interest or lack of interest, if any, in the result of the suit, the probability or improbability of the truth of their several statements, in view of all the other evidence, facts and circumstances proved or admitted on the trial, and, from all these circumstances, determine upon which side is the weight or preponderance of the evidence."

We cannot see that the court erred in refusing to give the eleventh. It is here copied: "(11) You are instructed that, in the consideration of this case and in the determination of any of the issues or questions involved, you should not be influenced or actuated in any degree by sympathy or by the fact that the plaintiff is an individual or the defendant a corporation, but you should determine such issues and questions the same as if this action was between two individuals of equal standing." We are not cited to any authority holding or indicating that the refusal to give this instruction was erroneous. We have examined all the instructions given to the jury, and, while we find nothing covering the proposition presented, the instructions appear to have been a full and fair statement of the law by which the jurors should be governed in their deliberations. All the issues in the case were well and

properly presented, and there appears to have been no misdirection. Just what was meant by the words "of equal standing" at the close of the instruction is not clear. Taken in connection with the context, it might be construed to be the equivalent of natural persons, or, possibly, of persons of equal standing financially or socially. While we do not attach much importance to the phrase, yet it must be conceded that its meaning might be doubtful when considered by the jury. We are not aware of any serious objection to cautionary instructions of the kind here presented, yet they are not always given, and we think the giving or refusing of instructions of this kind must be left to the sound discretion of the court. The whole conduct of the trial is under the supervision of the court, and phases are presented which do not appear in the record on review. If the necessity for such an instruction arises, it might become the duty of the court to give one properly guarded bearing upon the subject, while in other cases, based on similar issues and evidence, such an instruction is not necessary. No question of law growing out of the issues is presented, and the necessity, or absence thereof, for such an admonition rests to a great extent in the judgment and discretion of the presiding judge. Error in refusing the instruction does not affirmatively appear.

It is next contended and urged, with no slight degree of energy, that the verdict of the jury is excessive. The amount returned by the jury was $12,750. That this is quite a large sum of money is apparent; but that it is excessive, when considered in connection with the injury received, is not so clear. At the time of the accident plaintiff was an unmarried young lady 22 years of age, of good health, and in the enjoyment of all the hopes and aspirations of one of her age and station in life. As testified by her physician and abundantly supported by other evidence, she is a partial mental and physical wreck, and that condition is permanent. She has remained unmarried, and is a continual and permanent sufferer with-

out any hope of recovery. She is, and must always remain, unable to engage in any avocation. Her nervous system is to a great extent impaired. She is unable to take the nutritive food which the human organism demands, and at times unable to care for herself. It is said, in support of this contention, that the verdict is more than three times as large as any verdict formerly rendered in her behalf, and this fact is urged as proof that the verdict last rendered is the result of sympathy, passion or prejudice. However, when we reflect that the trial was had and the verdict rendered six years after the receipt of the injury, its permanency is made more apparent, and the hope that by lapse of time nature would provide relief is banished. The amount of the verdict and judgment, which included the cost of medical attendance, cannot be said to be more than compensatory.

We discover no error in the record which requires a reversal of the judgment of the district court, and it is therefore

AFFIRMED.

FAWCETT, J. I am unable to concur in the third paragraph of the syllabus, or in the reasoning of the opinion in support thereof.

LETTON, J. I agree with Judge FAWCETT.